UNITED STATES DISTRICT COURT
for
NORTHERN DISTRICT OF TEXAS

# Petition for Person Under Supervision

| | |
|---|---|
| Person Under Supervision: | Dustin Mishler — Case No.: 3:09-CR-346-D(01) |
| Name of Sentencing Judge: | Senior U.S. District Judge Sidney A. Fitzwater |
| Date of Original Sentence: | December 3, 2010 |
| Original Offense: | Possession of Child Pornography, 18 U.S.C. § 2252A(a)(5), a Class C felony |
| Original Sentence: | 170 months custody, Life term of supervised release |
| Revocations: | None |
| Detainers: | None |
| U.S. Marshals No.: | 39685-177 |
| Type of Supervision: | Supervised Release — Date Supervision Commenced: September 23, 2020 |
| Assistant U.S. Attorney: | Pat Vickery — Defense Attorney: Douglas A. Morris (Court appointed) |

## Petitioning the Court for Action for Cause as Follows:

To issue a violator's summons.

The probation officer believes the person under supervision violated the following conditions:

**Previous Court Notifications**

On July 28, 2023, a Request for Modifying Conditions or Terms of Supervision with Consent of the Person Under Supervision was filed notifying the Court that Dustin Mishler had admitted to using methamphetamine and agreed to modify his conditions to include substance treatment and testing. The Court agreed and added substance abuse treatment to his conditions of supervised release.

**I.**

**Violation of Standard Condition No. 3**

The defendant shall answer truthfully all inquires by the probation officer and follow instructions of the probation officer.

**Violation of Special Condition**

The defendant shall participate and comply with the requirements of the Computer and Internet Monitoring Program, contributing to the cost of the monitoring in an amount not to exceed $40 per month. The defendant shall consent to the probation officer's conducting ongoing monitoring of his computers. The monitoring may include installation of hardware and/or software systems that allow evaluation of computer use. The defendant shall not remove, tamper with, reverse engineer, or circumvent the software and/or hardware used by the Computer and Internet Monitoring Program. The defendant shall permit the

probation officer to conduct a preliminary computer search prior to the installation of software. The monitoring software may be disabled or removed at any time during the term of supervision at the discretion of the probation officer.

**Violation of Special Condition**

The defendant shall not use any computer other than the one the defendant is authorized to use, without prior approval from the probation officer.

**Violation of Special Condition**

The defendant shall submit to periodic unannounced examination of his computers, storage media, and/or electronic internet-capable devices performed by the probation officer at a reasonable time and in a reasonable manner based on reasonable suspicion of contraband evidence of a violation of supervision. This may include retrieval and copying of any prohibited data and/or removal of such systems for the purpose of conduction a more thorough inspection. The defendant shall provide written authorization for release of information from the defendant's Internet service provider.

**Violation of Standard Condition No. 10**

The defendant shall permit the probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer.

**Nature of Noncompliance**

Dustin Mishler violated these conditions of supervised release when he possessed, accessed, and used an unmonitored internet-capable cellular device (Samsung) in or about September 2026. On September 2, 2026, U.S Probation Officer Beth Long (USPO B. Long) and U.S. Probation Officer Alicia Long (USPO A. Long) conducted a routine home inspection of Mr. Mishler's home. USPO B. Long inquired if Mr. Mishler had any unmonitored devices, wherein Mr. Mishler advised he had Samsung cellular device.

When asked about the device, Mr. Mishler stated he uses this devices AI application, Gemini to assist with preparation of his legal documents. USPO A. Long advised the device would be confiscated and searched; however, Mr. Mishler refused to surrender the device.

## Personal History

Mr. Mishler began his term of supervised release on September 23, 2020, in the Northern District of Texas, Fort Worth Division. On September 25, 2020, he reported and completed his intake with U.S. Probation Officer Bevan Vaughan (USPO Vaughan). At that time, the conditions of supervised release were reviewed with him Mr. Mishler to which he signed and acknowledged understanding. Additionally, he was provided a copy of his judgement. Mr. Mishler resides alone in Arlington and is unemployed; however, he receives financial benefits from the Veterans Administration services (VA).

Mr. Mishler attended sex offender treatment with Bill Bruner, LCSW, LSOTP at Assertive Community Treatment (ACT), in Dallas from October 2, 2020, through July 8, 2024. Mr. Mishler passed six polygraph examinations from June 28, 2021, through April 8, 2024. On July 8, 2024, Mr. Mishler was successfully discharged from sex offender treatment. Mr. Bruner recommended that Mr. Mishler continue to address

his mental health issues through the VA and that he submits to annual polygraph exams to monitor his compliance with conditions of supervised release.

On August 26, 2025, Mr. Mishler was scheduled to take a polygraph exam. At the time of his appointment, Mr. Mishler was notified that the polygraph session was being video recorded. Mr. Mishler began reading a written statement citing information about Jeffrey Epstein and Bill Clinton. At the end of the statement, he said he was being forced to take this exam but would still do so. At that time, the examiner told Mr. Mishler he would not be tested.

On May 6, 2026, a follow up polygraph was administered. The results of this test indicated a significant response to the question, "Since your last polygraph have you viewed any pornographic material of anyone under the age of 18?" After the exam, Mr. Mishler was notified of the results, and he made no post-test statement.

On June 8, 2026, a follow up polygraph was administered. The results were inconclusive to the following questions, "Since June 2025, have you accessed child pornographic materials? Since June 2025, have you engaged in sexual acts with someone age 17 or younger? Since June 2025, have you committed a sexual crime?" After the exam, Mr. Mishler was notified of the results, and he made no post-test statement.

On August 14, 2026, a follow up polygraph was administered. The results were inconclusive to the following questions, "Since April 2024, have you had sexual contact with anyone under age of 17? Since April 2024, have you looked at any images of a nude person under 18? After the exam, Mr. Mishler was notified of the results, and he made no post-test statement. Mr. Mishler is scheduled for another polygraph exam on September 14, 2026.

During the home visit on September 2, 2026, Mr. Mishler showed USPO A. Long images of adult females in bikinis on the unmonitored device. USPO A. Long asked about the images being sexually stimulating. Mr. Mishler denied masturbating to these images nor that they were sexually stimulating to him, he stated he views these images as "what he is seeking from a future wife." He then asked if he could get this device monitored. USPO A. Long advised that may be an option in the future; however, we were going to confiscate and search the device first. Mr. Mishler stated he did not feel comfortable and refused to surrender the device. He stated he had "done everything right this past five years." USPO A. Long advised that refusing to surrender the device was a violation of his conditions of supervised release and that the court would be notified. Mr. Mishler responded, "Good. I want to talk to the Judge."

On September 2, 2026, USPO B. Long received an e-mail from Mr. Mishler advising he is no longer in possession of the unmonitored device. On September 11, 2026, Mr. Mishler reported for an administrative hearing with USPO B. Long and Supervising United States Probation Officer Courtney Rich (SUSPO Rich). When asked how he got rid of the unmonitored device, he reported he "put it in the trash." SUSPO Rich advised we were in the process of notifying the Court of the recent violations and that he is still to attend his polygraph exam scheduled for September 14, 2026, as well as abide by all other conditions of supervised release.

**Statutory Provisions — Protect Act Supervised Release**

| | |
|---|---|
| **Statutory Maximum Custody:** | 2 years. 18 U.S.C. § 3583(e)(3) |
| **Mandatory Revocation Statutes:** | Not applicable |
| **Fine:** | None |
| **Statutory Maximum for Reimposition of Supervised Release:** | Life |

According to U.S. v. Jackson, 559 F.3d 368 (5th Cir. 2009), "when an initial term of supervised release is revoked, the district court may impose a new term of supervised release as part of a revocation sentence. The maximum length of this new term is calculated as follows: 'The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.'" Additionally, in U.S. v. Campos, 922 F.3d 686 (5th Cir. 2019), the Fifth Circuit held that the mandatory minimum term of supervised release that is authorized by statute for the offense that resulted in the original term of supervised release does not apply to post-revocation terms of supervised release. Therefore, a defendant is subject only to the maximum (and not any mandatory minimum) term of supervised release.

**Chapter 7 Violation Computations**

| | | |
|---|---|---|
| **Violation Grade:** | C | USSG §7C1.1(a), p.s. |
| **Criminal History Category:** | III | USSG §7C1.5, p.s. |
| **Imprisonment Range:** | 5-11 months | USSG §7C1.5, p.s. |
| **Fine:** | None | USSG §7C1.4, comment. (n.4) |

Pursuant to USSG §7C1.3(b), the Court shall revoke supervised release if required by statute. Otherwise, the Court should conduct an individualized assessment, taking into consideration the grade of the violation, to determine whether to revoke supervised release. Revocation is generally appropriate for a Grade A violation, often appropriate for a Grade B violation, and may be appropriate for a Grade C. violation.

In Esteras v. U.S., 606 U.S. 185 (2025), the Supreme Court held that a sentencing court may not consider the factors listed in 18 U.S.C. § 3553(a)(2)(A), which include "the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," when determining a sentence following a revocation of a term of supervised release.

In Tapia v. U.S., 564 U.S. 319 (2011), the Supreme Court held that 18 U.S.C. § 3582(a) does not permit a sentencing court to impose or lengthen a prison term in order to foster a defendant's rehabilitation.

Case 3:09-cr-00346-D Document 50 Filed 09/11/26 Page 5 of 5 PageID 244

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 11, 2026

Respectfully submitted,

Beth Long
U.S. Probation Officer
Fort Worth Division
Phone: 682-610-1764
Email: beth_long@txnp.uscourts.gov

Approved,

Courtney Rich
Supervising U.S. Probation Officer
Phone: 469-623-1237

---

**Order of the Court:**

☐ No action.

☒ The Issuance of a Warrant. Petition and warrant sealed and not to be distributed to counsel of record until arrest effectuated.

☐ The Issuance of a Summons.

☐ Other or Additional:

☐ File under seal until further order of the Court.

The Honorable Sidney A. Fitzwater
Senior U.S. District Judge

September 11, 2026
Date